## FELDMAN v ROTH et

Ohio Appeals, 9th Dist, Summit Co

No 2098.   Decided May 26, 1932

Foust & Holden, Akron, for plaintiff.
Gottwald, Breiding & Hinton, Akron, for defendants.

122

FUNK, J.

There is much conflict in the evidence as to what was said by the respective parties— that is, the Feldmans, Thornton, and Mr. Hibbard, who was assisting Mr. Thornton— about the value of the several properties, the amount for which the two Akron properties were rented, and the mortgages upon them and the way the mortgages were payable, all of which we find to be immaterial from the view we take of this case.

The evidence clearly shows, by the testimony of both Emma Schille and Marvin Thornton, that at no time did Emma Schille ever see the Feldmans or said Marvin Thornton, although said Thornton's name appears as a witness to her signature on both her two deeds and her mortgage to the Feldmans, respectively, and by comparing his admitted signatures on the contract, supplemental contract, and deed of the Feldmans to Emma Schille, with those on said two deeds and said mortgage, it is quite apparent that they are his signatures. It would thus seem that said Thornton did not properly sign said three instruments as a witness to the signature of Emma Schille, and that it has some bearing upon his relationship with Roth, his general attitude in the matter, and his anxiety to get the deal closed.

It further appears from the testimony of Emma Schille that she knew nothing about said farm until she signed said contract at the request of Mr. Roth, that she talked to no one but Mr. Roth about said farm or the two properties in Akron, that she signed said two deeds and mortgage to the Feldmans at the request of Mr. Roth, that she knew nothing about the two Akron properties, and that she did not know and could not remember when he first talked to her about them, and that said farm, although deeded to her, belonged to Mr. Roth and not to her.

The evidence also shows that Emma Schille never had any title or interest in the two Akron properties, beneficial or otherwise, until after the said claimed contract was signed. While the deeds from Griselda A. Roth, an unmarried daughter of defendant Alphonse A. Roth, for the Schiller avenue property, and the deed of said Roth and wife for the Chester avenue property to Emma Schille, are both dated Dec. 15, 1930, it is admitted by defendants that said deeds, purporting to convey said two properties to Emma Schille, were never delivered to her, but were delivered only to the abstractor to be by him placed on record after the contract was signed, and that she never saw said deeds.

It also appears from the evidence that said Emma Schille signed said pretended contract and two deeds and mortgage to the Feldmans at the instance and request of the defendant Roth at a time when the deeds to her had not been delivered to her or to anyone for her before they were even delivered to the abstractor for record and abstracting.

It is thus apparent that at no time did Emma Schille have any interest in or title to said two Akron properties on Chester avenue and Schiller avenue, and at no time did she have any negotiations in reference to said properties or the sale or exchange of the same with the Feldmans or with Thornton or anybody representing them, and that she had no connection whatever with the contract which bears her signature, except to sign her name thereon at the request of said Roth, and when she knew nothing about what she was signing.

Under such circumstances it is evident that the minds of the Feldmans and Emma Schille never met in the making of any contract, and that there was never any contract between them, and that the writing signed by them does not constitute a contract between them.

Indeed, it is not seriously claimed that Emma Schille has any right to enforce any contract against the Feldmans, nor can it

be claimed, under the circumstances disclosed by the evidence, that she was acting as agent for said Roth, who, it is claimed, was her undisclosed principal, as she did not act for herself or as the agent of anybody, but merely allowed the use of her name at the request of said Roth.

If it could be said that said transactions concerning said claimed contract with Emma Schille resulted in a writing which, under all the circumstances, amounted to a contract between Roth and Feldmans, such a contract is not enforceable, for the reason that the minds of the parties never met with respect to a material part of the contract, to-wit, the Feldmans never intended to make a contract with Roth. It appears from the testimony of both Mary and Anton Feldman and several of their children, that they told Thornton at the very beginning of the transaction and before the claimed contract was signed by anyone, that they would not make a contract with Roth or have any dealings with him, and that they would not sign the contract or go forward with the deal if he owned the properties or had any interest in them. It further appears that at no time did the Feldmans know that Roth owned the two Akron properties until after they had signed said claimed contract with Emma Schille and the deed to her and it had been left in escrow.

While there is much conflict in the testimony of the witnesses for plaintiff and those for defendant as to just when the Feldmans first told Thornton they would not deal if Roth owned said two Akron properties, and about what was said as to whether Roth or Schille owned said two Akron properties, it is not disputed that Mr. Jordan, out of whose real estate office Mr. Thornton was working and with whom it is claimed the deed from Feldmans to Emma Schille had been placed in escrow, Mr. Thornton, Mr. Hibbard and Mr. Roth, all four knew before the deed from the Feldmans to Emma Schille was delivered out of escrow that the Feldmans refused to close the deal, and that said Jordan, Thornton and Hibbard all had written notice from the attorneys for Feldmans not to deliver their deed to Emma Schille to anyone but to return it to the Feldmans or their said attorneys before it was delivered to the personal attorney for the defendant Roth.

Under all the facts and circumstances as disclosed by a reading of the transcript of the evidence and the exhibits admitted in evidence, we are inclined to the opinion that the plaintiff has maintained the burden of proving, by a preponderance of all the evidence, that she and her husband refused to make the deal and sign said claimed contract and deed to Emma Schille if the defendant Roth owned or had any interest in said two Akron properties, and that said Roth, Thornton, Hibbard and Jordan all knew of such refusal before the deed from Feldmans to Emma Schille was delivered to the attorney for the defendant Roth.

It is fundamental that mutual consent is essential to every agreement, and that agreement is essential to a contract, and that as a rule there can be no binding contract where there is no real consent, and that there is no agreement where one party enters into the contract under a mistake as to the identity of the other party, as where one party has accepted an offer meant for another.

We find the reasons and fundamental principals underlying the right of one party to avoid a contract because of a mistake as to identity of the other party thereto, well stated in L.R.A. 1916D, beginning on page 801, as follows:

"The right to avoid a contract because of mistake as to the identity of the other party thereto is based upon the right of a party to choose with whom he will enter into contractual relations. No reason need be given for the manner of exercising this right of choice. For some reason satisfactory to himself a man may be willing to deal with a certain person but not with another on precisely the same terms. Everyone has this right, that is, to select and determine with whom he will contract; he may not have another person thrust upon him without his consent. The reputation of a certain person or firm may be such that the party desires to contract with him and him only. If a mistake arises and such a party contracts with another in the belief that he is contracting with the desired person, the contract may be avoided. It is more accurate to say that no contract exists. This rule applies where the mistake arises without any fraudulent conduct, at least no more fraudulent conduct than nondisclosure of facts.

"In some cases stopping short of express representations, deceptive appearances are created which amount to fraud. In such a case the reason for avoiding the contract is much stronger than in the absence of fraud. For here, as in the case of express fraudulent representations as to the identity of the party with whom the negotiations are being conducted, an element additional to mistake is introduced, viz., that of fraud. The party thus mistaken as to the identity of the other party to the contract has the right to avoid the contract."

124

The following authorities also support this position:

1 Page on Contracts, p. 390, §260.

13 C.J., "Contracts," p. 369, §245, and p. 378, §266.

123 Mass. 28, Boston Ice Co v Potter.

141 Mass. 1, Rodliff v Dallinger.

**9 Ohio Jur., "Contracts," p. 275, §46.**

17 C.C. (N.S.) 491, 42 C.D. 247, Arthur Coal & Coke Co. v Pittsburgh Coal Co.

We are therefore of the opinion that plaintiff is entitled to have said claimed contract and her deed to Emma Schille cancelled, set aside and held for naught, and declared to be of no force or effect in law or equity to affect the title to said premises, and the defendants Roth, Schille and Thornton enjoined from interfering with her in the possession of said 138-acre farm, and from asserting any right, title or interest therein; that the right of Roth to have the petition dismissed, as prayed for in his answer and thereby cause said claimed contract to be enforced against the Feldmans, must be denied, for the reason that he never made any contract with the Feldmans; and that neither of said defendants is entitled to specific performance of said claimed contract.

A decree may be drawn in favor of plaintiff, similar to that in the Common Pleas Court, and the clerk of this court ordered to cause a memorandum of the order of cancellation of said deed to be entered upon the margin of the record of said deed as recorded in Summit County, Ohio, deed records, volume 1425, page 377.

PARDEE, PJ, and WASHBURN, J, concur.