DECISION
Plaintiffs-appellants Yanien Lee and Shwujen Lee appeal from a judgment of the Franklin County Court of Common Pleas overruling appellants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial, subsequent to a jury verdict in favor of defendants-appellees William Maibaum and his home inspection company, C.D.E. Home Inspection Co., Inc. ("C.D.E.").
Appellants, husband and wife, purchased in 1997 a house located at 2480 Wenbury Road in the city of Upper Arlington, Ohio. The contract of purchase contained a home inspection clause and, on the recommendation of their real estate agent, appellants, through the agent, arranged to have the home inspected by C.D.E. Mr. Maibaum was the sole home inspector employed by C.D.E., and he and his wife Barbara J. Maibaum were the owners of the company.
Prior to undertaking inspection of the home, Mr. Maibaum had no direct communication with appellants, and there was no agreement, either written or oral, which would define either the scope of the inspection to be undertaken by Mr. Maibaum, or C.D.E.'s duties and responsibilities in connection therewith.
Mr. Maibaum inspected the property on August 20, 1997. The two rear rooms of the home, the family room and the "Florida room," were built over a crawl space which was accessible through a small entryway from the principal basement of the house. The rooms were each approximately 20 feet in width and the distance from the crawl space entryway to the opposite block wall of the crawl space was approximately 41 feet. Appellants subsequently established at trial that most of the crawl space area was not readily viewable from the vantage point of the crawl space entrance. Mr. Maibaum did not enter the crawl space during the course of his inspection, but examined it visually from the entrance using a work light. The written inspection report subsequently issued by C.D.E. for appellants contained the following assessment of the crawl space:
"* * * The walls of the crawl space are bare of insulation and no evidence of cracks, bowings, deterioration, etc. were noted. There was a trace of dampness noted on the base of several outside walls but no standing water or previous evidence there of noted. In my opinion, the dampness noted results from condensation of humidity in the area. There is no reason to believe that the damp gravel noted will have an abnormal impact on the reliability of the dwelling.
"Some crawl space humidity was noted but no sign of rot, mildew or fungus noted on the joists or floor boards. To reduce humidity, one could install corrective measures such as opening ventilation ports, installing ventilation ports, installing a dehumidifier, putting plastic sheeting over the area, etc."
C.D.E.'s report also noted, in connection with the rear wall of the house adjacent to the crawl space, that there was negative drainage resulting from the slope of a backyard pool, located only five feet from the rear wall, towards the house which could "contribute towards a presence of water at the foundation." The report also noted broken or inadequate downspouts in the front and rear of the home which could cause water problems, and various other defects not pertinent to the present case.
After receiving the inspection report, appellants engaged in further negotiations with the sellers based in part upon the various defects disclosed in the inspection report, particularly regarding the condition of the roof. The sale of the home was finalized in October 1997.
After appellants occupied the house they began to experience problems with air infiltration into the back rooms, and hired a handyman to remedy the problem. The handyman noted that the sliding glass door in the family room was not closing properly because of a much more serious structural problem which would have to be addressed by a better-equipped contractor. Appellants subsequently engaged the services of contractor Paul Catalogna, who examined the crawl space area under the house to determine the cause of sagging floors and walls which were causing problems with the doors and windows. The visual inspection upon entering the crawl space immediately disclosed severe rotting of the sill plate, band board, and floor joists at the rear of the house caused by water infiltration. Catalogna ascertained that, because the in-ground pool behind the house was so close to the back wall, and because the pool deck sloped towards the house, water runoff accumulated against the side of the house, seeped down the exterior walls, and saturated the band board, sills, and floor joist ends, leading to severe damage. Appellants subsequently expended $18,622.50 to repair the damage to structural components of the house, and additional amounts for removal of the in-ground pool and regrading of the backyard.
The home inspection agreement produced by C.D.E. contained the following disclaimers of the scope of inspection and limitations on liability:
"* * * Wherever possible, all rooms, areas and accessible spaces will be entered to evaluate existing conditions. This applies particularly to attics and crawl spaces. Attics with less than 4 feet and crawl spaces with less than 3 feet of clearance will not be entered but will be examined visually from a point of entry.
"* * *
"* * * Liability for errors, omissions, negligence, etc. shall be limited to and not exceed the amount of the inspection fee."
Appellants filed suit in June 1998 against C.D.E., Mr. Maibaum, and the sellers of the home, who were later dismissed from the case. Pursuing their action against C.D.E. and Mr. Maibaum, appellants alleged negligence in C.D.E.'s inspection of the property, negligent misrepresentation by C.D.E., and a series of violations of Ohio's Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq. Appellants alleged that the failure to enter and inspect the crawl space before preparing the report constituted an unconscionable sales practice in violation of R.C. 1343.03. Appellants further alleged that the limitation of liability contained in C.D.E.'s inspection report was not a bargained-for item resulting from an agreement between the parties, and that C.D.E.'s failure to disclose any intention to limit liability prior to issuing the report, also constituted an unconscionable sales practice act under R.C. 1345.03.
Appellants also alleged that C.D.E.'s failure to inspect crawl spaces less than 36 inches in height when such low clearance is the rule rather than the exception, as well as their failure to clearly state in the report that the crawl space had not been entered for inspection, constituted unfair or deceptive consumer acts or practices under R.C.1345.02. Finally, appellants alleged that all the above-described acts and practices had been explicitly declared deceptive or unconscionable under administrative rules adopted by the Ohio Attorney General or under Ohio case law.
At trial, appellants relied primarily upon the above-outlined evidence regarding the severity of the damage and the extent to which it could have been observed either from the exterior conditions of the home or by entering the crawl space. The parties expressly stipulated that the damage to band board, sill and joists existed to some degree at the time of Mr. Maibaum's inspection. Appellees likewise did not dispute that an inspector entering the crawl space would readily have been able to observe the damage. Appellees argued, rather, that the provisions in the home inspec-tion report limiting liability and the scope of inspection were reasonable, and that appellants had accepted these terms when they accepted the report and, in fact, accepted the benefit of the report by using it to negotiate for the sellers to undertake other repairs deemed necessary in the report.
The jury returned a verdict in favor of appellees on all claims. Appellants subsequently filed a timely motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The memorandum in support of this motion limited argument to appellants' CSPA claims and did not dispute the jury's resolution of the negligence and the negligent misrepresentation claims. The trial court overruled appellants' motion, and appellants filed the present appeal from that decision.
Appellants bring the following assignments of error:
"APPELLANTS' ASSIGNMENT OF ERROR NO. 1
"The Trial Court Erred In Overruling Plaintiffs-Appellants' Motion For Judgment Notwithstanding The Verdict Or In The Alternative For A New Trial[.]
"APPELLANTS' ASSIGNMENT OF ERROR NO. 2
"The Judgment Was Against The Manifest Weight Of The Evidence[.]
"APPELLANTS' ASSIGNMENT OF ERROR NO. 3
The Trial Court Erred To Appellants Substantial Prejudice By Permitting William Maibaum To Testify That The Inspection Report Disclaimers Were A Contract[.]"
For ease of discussion, we will address appellants' assignments of error out of numerical order. We turn first to appellants' third assignment of error, in which appellants assert that the trial court erred in permitting Mr. Maibaum to testify that his final inspection report, including the disclaimers contained therein, constituted a contract with appellants. At trial, appellants repeatedly objected during Mr. Maibaum's testimony to any reference to any existence of any "contract" between the parties prior to issuance of the home inspection report. Indeed, in the present case, the evidence is ambivalent on the manner and time of the formation of a contract between appellants and C.D.E. It is apparent that, with the real estate agent as an intermediary, appellants sought a home inspection prior to purchasing the property, and C.D.E. undertook such an inspection. There was little evidence presented regarding the respective duties of the parties, including the price and scope of the inspection, which remained largely undefined prior to the inspection. Under these conditions, appellees asserted, and the jury accepted, that the formation of a contract occurred when C.D.E. tendered the report and appellants accepted it, subsequently employing it as leverage in negotiations with the sellers and paying for the report at closing.
Formation of a valid contract requires an offer, acceptance, and a meeting of the minds as to the essential terms of the contract. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. "It is fundamental that mutual consent is essential to every agreement, and that agreement is essential to a contract, and that as a rule there can be no binding contract where there is no real consent." Feldman v. Roth (App. 1932), 12 Ohio Law Abs. 121, 123. Acceptance can be explicit, by performance or part-performance, rarely, by inaction or silence. Blazavich v. CNA Ins. Cos. (June 30, 1998), Franklin App. No. 97AP-1282. " '[W]here [a party] with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstances, which would indicate to a reasonable person that they were offered with the expectation of compensation,' " an acceptance may be taken as effective and a contract formed. Id., citing 2 Williston on Contracts (4 Ed. 1991) 567, 569.
Under the circumstances of this case, we agree with appellees that when appellants accepted the benefit of the report and employed it in their subsequent negotiations with the sellers, the restrictive disclaimer language contained in the report became effective as contractual terms between the parties. Under these circumstances, the actual timing of formation of contract between the parties is less relevant than the terms contained therein. Whether Mr. Maibaum could properly be permitted in his testimony to make conclusory statements regarding the existence of a contract between himself and appellants prior to tendering the report has little bearing on the determination of whether a contract ultimately existed between the parties, and the determination of the effect of its terms upon the subsequent rights and obligations of the parties. Appellant's third assignment of error is accordingly overruled.
We next turn to appellants' first assignment of error, which asserts that the trial court erred in failing to grant appellants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on appellants' CSPA claims. The standard for determining a motion for judgment notwithstanding the verdict is whether the verdict is one which could be reasonably reached from the evidence. Hartford Cas. Ins. Co. v. Easley (1993), 90 Ohio App.3d 525, 530. The trial court must construe the evidence most strongly in favor of the nonmoving party and, where there is substantial evidence to support the judgment and reasonable minds could reach differing conclusions, the motion for judgment notwithstanding the verdict should be denied. Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271. Thus, the standard for granting a motion notwithstanding the verdict is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679; Barker v. Netcare Corp., 147 Ohio App.3d 1,2001-Ohio-3975, jurisdictional motion overruled 95 Ohio St.3d 1421. The grant of a new trial as an alternative to judgment notwithstanding the verdict lies within the sound discretion of the trial court. Highfield v. Liberty Christian Academy (1987), 34 Ohio App.3d 311, 315.
In substance, appellants' CSPA claims assert, that the rotted condition of the Florida room and family room was plainly visible by any adequate inspection of the crawl space area, and that C.D.E.'s inspection report representing that the crawl space area had been inspected and found to be sound was misleading, and constituted an unfair deceptive act or practice under R.C. 1345.02.
Courts addressing comparable CSPA actions have held that intent to deceive is not a required element to find a violation of the deceptive practices section of the CSPA. It is sufficient that the conduct complained of " `has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.' " Funk v. Montgomery AMC/Jeep Renault (1990), 66 Ohio App.3d 815, 823. Acts or practices complained of under R.C. 1345.02 need not rise to the level of fraud, negligence or breach of contract. Id.
In the present case, appellants assert that the inspection report supplied by C.D.E. made representations regarding the condition of the floor system under the Florida room and family room which must be found inherently deceptive based upon appellees' subsequent admission at trial that the damage likely existed at the time of the inspection. Manifestly, this abbreviated analysis of the facts and law is inapplicable to the present case, since it would essentially impose strict liability upon any home inspector for any latent defects existing in a home at the time of inspection, regardless of whether such defects could in fact have been discovered under even the most stringent and intrusive inspection. Rather, the question before the jury was whether the nature of the damage as described by witnesses, in conjunction with the stated limitations upon inspection found in the inspection report disclaimers, misled appellants in such a manner as to violate the CSPA. The jury had before it the testimony of both Mr. Maibaum and Mr. Lee indicating that the defects were not visible from the crawl space point of entry. The express limitations in the inspection report stated that crawl spaces less than 36 inches in height would not be entered, but would be visually inspected from the point of entry. Appellants do not dispute that the crawl space was less than 36 inches in height. There was therefore substantial evidence before the jury from which the jury could conclude that the description of the crawl space condition, in conjunction with the express limitations found in the inspection report regarding the nature and extent of crawl space inspections, was not misleading, but represented an accurate assessment pursuant to Mr. Maibaum's visual inspection from the point of entry. We accordingly find that appellants were not entitled to judgment notwithstanding the verdict on this claim.
Appellants next argue that the disclaimer provisions of the inspection report regarding the scope and extent of crawl space inspections are, per se, unconscionable in that they were unilaterally imposed after completion of the inspection and allowed appellees to evade liability for inaccuracies or inadequacies in the inspection report after appellants had relied to their detriment upon the report.
While the purpose of the CSPA is protection of the consumer, and the act is generally to be liberally construed in favor of the consumer, Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, the act must also be construed to promote its consistent goal of fairness. Funk v. Montgomery AMC, supra. The jury considered the evidence before it and found that appellants were not unfairly surprised by the late disclaimers of responsibility when the inspection report was produced. This conclusion is buttressed by the fact that appellants proceeded to rely upon the report, with its limitations, in their subsequent negotiations with the sellers. Appellants then paid for the report as expected at closing. In assessing the trial court's denial of the motion for judgment notwithstanding the verdict, we are not to substitute our judgment for that of the jury or disturb that conclusion on the simple basis that we, as finders of fact, might have concluded otherwise. The question of whether the clearly expressed limitations in the inspection report, presented to appellants as part and parcel of the inspection results themselves, constituted an unconscionable limitation upon the obligations and duties of the home inspector pursuant to the contract was a question of fact for the jury to be determined according to the jurors' assessment of the relative positions of the parties, the circumstances of the transaction, and the jurors' own application of fundamental concepts of fairness. In the present case, the facts do not warrant disturbance of the jury's conclusions on this issue, and we accordingly find that appellants' R.C. 1345.03 claim did not warrant either judgment notwithstanding jury verdict or a new trial.
The additional CSPA claims raised in appellants' complaint in the trial court are not individually argued upon appeal, and will not be individually addressed. We will point out, however, that to the extent appellants argued in the trial court that the limitation on damages contained in the inspection report, which limited recovery by the purchasers to the amount of the home inspection fee, was unconscionable is rendered moot by our finding that judgment notwithstanding the verdict in favor of appellants' in the present case was not warranted, so that the quantity of damages is rendered moot.
We lastly turn to appellants' second assignment of error, which asserts that the trial court's judgment was against the manifest weight of the evidence. To the extent that appellants argue CSPA issues under this assignment of error they have been disposed of in our discussion of appellants' first assignment of error concerning the trial court's refusal to grant judgment notwithstanding the verdict or a new trial. Appellants' do argue separately under this assignment of error, however, certain issues related to their negligence claims which were not raised in the first assignment of error. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, part one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
Essentially, the negligence claim rests upon whether the damage to the rear of the home should have been ascertained from external conditions, such as out-of-square windows and doors. Appellants thus raise the issue of whether Mr. Maibaum was negligent in his inspection of the home even if his contract limitation expressly disclaiming any duty to enter crawl spaces less than 36 inches in height were to be found valid and enforceable.
Quite simply, there was conflicting evidence on this issue presented at trial. Mr. Maibaum personally testified that no visible movement could be observed in the rear wall of the house at the time of his inspection. Appellants presented evidence to the contrary, indicating that both the handyman hired to correct the draft problem and their contractor, Paul Catalogna, could ascertain the problem by visual inspection of window and door frames and the exterior wall of the house.
In assessing the conflicting evidence, we are mindful of the above-cited authorities emphasizing the primary rule of the finder of fact in assessing the relative weight and credibility to be given to evidence presented at trial. Obviously, in the present case, the jury made its own assessment of the relative credibility of the witnesses presented. It is not our function to substitute our judgment for the jury's on such purely factual questions. Examining the evidence as summarized above, it is apparent that there was competent, credible evidence to support the jury's conclusions on the negligence claim, and we are not in a position to disturb that conclusion. Appellants' second assignment of error is accordingly overruled.
In summary, we find that appellants have not established that judgment notwithstanding the verdict or a new trial were warranted, and we find that the trial court did not err in overruling appellants' motion. Appellants' first assignment of error is accordingly overruled. We further find that the jury's verdict was not against the manifest weight of the evidence, and appellants' second assignment of error is overruled. Finally, we find that no prejudicial error occurred in allowing testimony referring to the existence of a contract for home inspection and appellants' third assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas denying appellants' motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.