OPINION
{¶ 1} Denise Keefe, executor for the estate of Kevin Keefe, plaintiff-appellant, appeals from a judgment of the Ohio Court of Claims, in which the court granted summary judgment to the Ohio Lottery Commission ("commission"), defendant-appellee.
 {¶ 2} Appellant is the wife of Kevin Keefe, who bought an Ohio Super Lotto Plus ticket for the May 10, 2003 drawing. The prize amount specified during the televised drawing, as well as the amount advertised before and after the drawing in the various media, was $5 million. The director of the commission also officially certified the jackpot in the amount of $5 million. Mr. Keefe discovered his numbers matched the winning numbers, and he checked his numbers with the commission's website, which indicated that the jackpot for that drawing was $6 million. On May 15, 2003, the Keefes went to the commission's regional office in Cincinnati to redeem the ticket. Patricia Shelton, a secretary for the commission, accepted the ticket for verification. Shelton took the ticket to another room and then returned, telling the Keefes the computer had validated the ticket for $6 million, although the commission's computer system had actually validated the ticket for only $5 million. Shelton prepared a "claim form," upon which she indicated the prize amount was $6 million. Mr. Keefe signed the claim form. Kathlene Applegate, the commission's regional manager, supervised the redemption. Later that day, the commission notified the Keefes that the jackpot amount had only been $5 million.
 {¶ 3} On November 3, 2004, Mr. Keefe filed an action against the commission in the Ohio Court of Claims, alleging the commission had breached its contract with him when it awarded him $5 million instead of $6 million. Mr. Keefe died on November 13, 2004, and his wife, as executor of his estate, replaced him as plaintiff. On October 12, 2005, the commission filed a motion for summary judgment, and an oral argument was held on November 16, 2005. On December 20, 2005, the court issued a decision and entry, in which it granted summary judgment to the commission. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
[I.] The trial court erred when it held that Appellee's employee did not have the authority to bind Appellee in a contract.
[II.] The trial court erred when it held that no contract was formed when Appellant redeemed the winning ticket in exchange for a promise to pay $6,000,000.
 {¶ 4} We will address appellant's second assignment of error first, as it is dispositive of the instant appeal. Appellant argues in her second assignment of error that the trial court erred when it granted summary judgment to the commission based upon its finding that no contract was formed when Mr. Keefe redeemed the winning ticket in exchange for a promise to pay $6 million. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v. The Lima News (1996),109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks,
supra.
 {¶ 5} In the present case, appellant claims that a contract was formed between her husband and the commission when the commission's agent and her husband signed the claim form and agreed to the terms contained therein, which indicated her husband was to receive $6 million. We disagree. A contract is defined as an agreement upon sufficient consideration to do or not to do a particular thing. Koon v. Hoskins (Jan. 24, 1996), Vinton App. No. 95CA497. To constitute a valid contract, there must be the following: parties capable of contracting; a lawful subject matter; a sufficient consideration; a meeting of the minds of the parties; an actual agreement between the parties to do or to forbear doing the thing proposed in the agreement; and a compliance with the law in respect of any formal requisites which may pertain to the contract. Westfield Ins. Co. v. HULS Am.,Inc. (1998), 128 Ohio App.3d 270, 291, citing Will v. ViewPlace Civic Assn. (1989), 61 Ohio Misc.2d 476, 483, citingFeldman v. Roth (1932), 12 Ohio Law Abs. 121. The sale and purchase of lottery tickets is subject to the general principles of contract law. Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299. The commission promises to pay the holder of a lottery ticket containing the winning numbers the "jackpot" amount, which induces the purchase of the lottery tickets.Couchot v. State Lottery Comm. (June 30, 1994), Franklin App. No. 93APE09-1337, reversed on other grounds, Couchot v. StateLottery Comm. (1996), 74 Ohio St.3d 417.
 {¶ 6} Here, the trial court found the execution of the claim form did not create a contract and the only contract at issue was formed when appellant's husband purchased the lottery ticket. We agree. The "second contract" appellant contends was entered into was entitled "claim form for bank cashing or check payment." However, the claim form lacks several key indices of a binding contract. The claim form does not indicate any terms of any "contract" between the parties. There is no indication on the claim form that appellant's husband was doing or forbearing from doing any new act to constitute a formation of a new agreement, and there is no indication of any consideration for the creation of a second contract. Further, the "6 million" Shelton handwrote on the blank "prize amount" line on the claim form was merely a clerical error made in denoting the amount due under the actual contract and not a new offer for payment of prize monies, and it was unsupported by any new or different consideration on behalf of appellant's husband. Mr. Keefe's only consideration in this case was the $1 paid for the chance to win the certified amount, $5 million, and the only promise made by the commission was to pay the jackpot amount pursuant to the terms of contract formed by the initial ticket purchase. Thus, the execution of the "claim form for bank cashing or check payment" was simply a formal procedural prerequisite required of appellant's husband to receive the payment the actual contract entitled him to receive.
 {¶ 7} As the trial court found, the only contract in the present case was that formed when appellant's husband purchased his lottery ticket. The terms of this contract were contained on the back of the ticket and in the "Rules and Regulations of the Ohio Lottery Commission," as clearly stated on the reverse side of the ticket. By purchasing the ticket, appellant's husband agreed to be bound by these terms of the game. See Struna v.Ohio Lottery Comm., Franklin App. No. 03AP-787, 2004-Ohio-5576, at ¶ 9 (lottery ticket holders, by their purchase and redemption, agree to be bound by the terms of the game), citing WoodbridgePartners Group, Inc. v. Ohio Lottery Comm. (1994),99 Ohio App.3d 269, 273, and Board v. Ohio Lottery Comm. (Dec. 14, 1999), Franklin App. No. 99AP-208. The language on Ohio lottery tickets indicating that all tickets and prizes are subject to the rules and regulations of the commission also binds the purchaser of the ticket to such rules. See id., at fn. 2.
 {¶ 8} The various "Rules and Regulations of the Ohio Lottery Commission" are found in Ohio Adm. Code 3770:1. As applicable generally to all Ohio lottery games, Ohio Adm. Code 3770:1-8-03
provides, in pertinent part:
The director shall adopt detailed procedures for the validation of tickets for which a claim is made. Such procedures may include computerized validation as well as other validation tests to insure that the ticket is valid, and is, in fact, a winning ticket. These procedures shall be followed in each case before payment of a prize award is authorized. * * *
The rules and regulations specific to the Super Lotto Plus are contained in Ohio Adm. Code 3770:1-9-150. Ohio Adm. Code3770:1-9-150(H)(3) provides that "[a]ll winning tickets in [the Super Lotto Plus game] are subject to validation by the on-line computer system under procedures established by the director before the payment of any prize."
 {¶ 9} It is apparent from these regulations that the terms of the contract call for certain activities to take place before a winning prize can be collected. It is equally apparent that these activities that occur after the initial purchase of the lottery ticket are merely procedural formalities to validate the authenticity of the initial contract and do not provide the basis for new contract formation or the modification of the original contract terms. Here, per the affidavit of the commission's on-line product manager, Sharon L. Murray, Mr. Keefe's winning ticket was validated for $5 million by the commission's on-line computer system, in compliance with Ohio Adm. Code3770:1-9-150(H)(3). Because the on-line system validated the ticket, the payment terms of the contract were then required to be fulfilled by the commission.
 {¶ 10} The payment terms of the contract included Ohio Adm. Code 3770:1-9-150(E)(6), which provides, in pertinent part:
For each ticket bearing a selection which matches all six integers drawn, the prize pool to be paid shall be equal to the amount designated by the director (hereinafter "jackpot"). The director or his designee shall designate and certify the amount of the jackpot for each drawing in writing prior to each drawing. * * *
Thus, the contract between appellant's husband and the commission included a specific term, as found in Ohio Adm. Code3770:1-9-150(E)(6), regarding the jackpot amount appellant's husband was entitled to receive under the contract. There is no indication in this section or any other section of Ohio Adm. Code 3770:1 that the prize for winning the Super Lotto Plus can be anything other than the amount designated by the director and certified in writing prior to each drawing. The "Jackpot Authorization" form was submitted to the trial court and indicates explicitly that the current jackpot amount for the May 10, 2003 drawing was certified by the commission director for $5 million on May 9, 2003. Even if appellant's husband did not read the terms of the contract, including the payment terms in Ohio Adm. Code 3770:1-9-150(E)(6) that defined the amount to which he was entitled, he cannot escape their provisos. It is well-established that the failure to read the terms of a contract is not a valid defense to enforcement of the contract. Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 14. In addition, lottery players are on notice of the rules set forth in the Ohio Administrative Code. Struna, supra, at ¶ 13, citingWoodbridge, at 272. Thus, Mr. Keefe was bound by the payment terms included in Ohio Adm. Code 3770:1-9-150(E)(6).
 {¶ 11} For these reasons, we find that, as a matter of law, the claim form did not form a contract between appellant's husband and the commission. The only contract between the parties was the initial ticket purchase. The terms contained on the back of the ticket, as well as those contained in the Ohio Administrative Code sections, provided that the prize amount for the May 10, 2003 drawing was $5 million. Shelton's actions during the validation process were mere procedural formalities required by the terms of the underlying contract and did not create a new contract or modify the terms of the contract. Accordingly, the trial court did not err in granting summary judgment, and appellant's second assignment of error is overruled.
 {¶ 12} Appellant asserts in her first assignment of error that, as an agent of the commission, Shelton had the authority to bind the commission to a contract, which she contends was the claim form her husband signed. However, as we have already found that the claim form was not a contract between appellant's husband and the commission, whether Shelton had the authority to bind the commission to a contract is moot. Therefore, appellant's first assignment of error is moot.
 {¶ 13} Accordingly, appellant's first assignment of error is moot, her second assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.