HARDY, Appellant,

v.

GENERAL MOTORS CORPORATION et al., Appellees.

[Cite as *Hardy v. Gen. Motors Corp.* (1998), 126 Ohio App.3d 455.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–087.

Decided Feb. 27, 1998.

456

*John A. DeMuth,* for appellant.

*Gerald R. Kowalski* and *Kent Hanson,* for appellees.

GLASSER, Judge.

This is an appeal from two judgments of the Lucas County Court of Common Pleas which granted appellees' motion *in limine* and motion for a directed verdict.

On appeal appellant, Allen L. Hardy, sets forth the following three assignments of error:

"*First Assignment of Error*

"The trial court erred in granting defendant–appellees' motion *in limine* to exclude from evidence all reference to the NHTSA investigation.

"*Second Assignment of Error*

"The trial court erred in refusing to allow plaintiff–appellant to effectively cross-examine a witness using information obtained or available through portions of the NHTSA report.

"*Third Assignment of Error*

"The trial court erred in granting defendants–appellees' motion for directed verdict."

The undisputed facts which are relevant to the issues raised on appeal are as follows. On March 14, 1990, at approximately 7:00 p.m., appellant was driving his 1986 Chevrolet Corvette westbound on State Route 424 at a high rate of speed, when he lost control of the vehicle. After skidding and spinning out of control for more than four hundred feet, the Corvette went off the roadway and crashed into a telephone pole and a tree. Appellant was seriously injured in the crash, and his passenger, Larry Finkbeiner, was killed.

At the time of the accident, the weather was unseasonably warm and the road surface was dry. Investigators of the crash immediately noted that the rear end of appellant's Corvette was severed from the rest of the vehicle when it collided with the tree. Later, a more detailed examination of the vehicle revealed that a metal bar attached to the left rear wheel of the Corvette, known as a "tie rod," was broken.

On October 14, 1994, appellant filed the complaint herein against appellees, General Motors Corporation and Chevrolet Division of General Motors Corporation (collectively "General Motors"),[1] in which he alleged that the accident was caused by a defect in the Corvette's rear tie-rod assembly. Accordingly, the complaint stated claims based on product liability, breach of warranty, unreasonably defective condition, and failure to warn or correct the defect, and sought compensatory and punitive damages in excess of $50 million. The matter was scheduled for a jury trial.

---

1. Also named as defendants in the original complaint were T.R.W., Inc. and E.I. DuPont DeNemours and Co. Both companies, which were involved in the manufacture of parts that were used in appellant's 1986 Corvette, were dismissed as defendants on January 3, 1996.

Prior to trial, General Motors filed two motions *in limine,* in which it asked the trial court to exclude all references to a recall campaign which targeted 1988 and 1989 Chevrolet Corvettes, and a report by the National Highway Traffic Safety Administration ("NHTSA"), in which the agency published the results of its investigation of complaints regarding the rear suspension mechanisms of Corvettes manufactured between 1984 and 1990. On January 24, 1996, appellant filed a memorandum in opposition to General Motors' motions *in limine,* in which he argued that the NHTSA report and evidence of the recall campaign [2] should not be excluded at trial because they are relevant to the issues of the defective nature of the tie rod assembly and General Motors' knowledge that such product was defective. In support thereof, appellant attached to its memorandum a copy of the entire NHTSA report and a report by engineer Wade E. Troyer.

The NHTSA report contained copies of thirty consumer reports involving the failure of various Corvette parts, including tie rod failures. The report noted that General Motors announced a recall for Corvettes built in 1988/89 model years on February 5, 1990. The NHTSA report concluded, however:

"The [tie rod failure] problem was traced to excessive stress placed on the 'Vespel' tie rod bearing caused by an overload during the automated assembly process. Vespel is the bearing material (manufactured by Dupont) used in the outer bearing only. The bearing is made in a single cavity mold using a centering process. The overload problem pertains to vehicles manufactured between March 1987 and August 1989. As of January, 1990, the automatic assembly machine was removed from production in favor of a hand operation which more accurately monitors the stud and bearing loading during the assembly process.

"* * * Considering the years of service and low complaint, warranty, and sales data, *a safety related defect trend is not indicated for the 1984–1987 model years."* (Emphasis added.)

Troyer stated in his report that, in his opinion, a ball-and-socket joint to which the tie rod was attached did not swivel freely, causing the rod to bend and eventually break under the stress of ordinary driving. Troyer concluded that, if such a break occurred, the Corvette would not steer properly and, "[u]pon loss of control, an accident would predictably occur, if the auto were in motion." Troyer based his conclusions on a microscopic analysis of a "replica" of the broken tie rod and information contained in the NHTSA report.

On January 29, 1996, a jury trial was commenced. Before the jury was seated, however, a hearing on General Motors' motions *in limine* was held. Appellant's

---

2. All evidence of the recall campaign is included within the documentation which makes up the NHTSA report.

attorney argued to the trial court that the NHTSA report demonstrates that a design defect existed in appellant's 1986 Corvette, even though the manufacturing process for the affected parts differed between 1986 and 1988. In addition, appellant's attorney argued that the NHTSA report demonstrated that General Motors had notice of such a defect for some time before the recall was begun in March 1990.

At the close of the attorneys' arguments, the trial court granted General Motors' motions *in limine,* thereby excluding from evidence at trial the entire NHTSA report, including any evidence of a recall, and preventing appellant from cross-examining General Motors' witnesses with any information contained in the NHTSA report. Immediately thereafter, a jury trial commenced, at which testimony was presented by appellant, General Motors Senior Staff Analysis Engineer Walter Zych, and Professional Engineer Wade E. Troyer.

Appellant testified at trial that on the day of the accident, he met Larry Finkbeiner at Dewey's bar and offered to take Finkbeiner for a ride in his 1986 Corvette. Appellant further stated that he was driving on State Route 424 at a high rate of speed when he felt the Corvette "jerk to the right" just before he lost control of the vehicle. He did not remember feeling the vehicle hit the tree. Appellant testified that although he initially thought he had "dropped off" onto the berm of the road, he later inspected the accident site and noticed that the gravel shoulder of the road is level with the paved portion.

Zych testified on cross-examination that a 1986 Corvette has a different suspension system than a 1988 or 1989 Corvette. Zych further stated that he performed an experiment in which he drove a 1986 Corvette with the left rear tie rod disengaged, and it "worked fine." Zych testified that, in his opinion, the Corvette could be driven safely without the tie rod because there are "other devices that maintain the position of the wheel entirely." Zych concluded that the tie rod broke when the Corvette hit the tree.

Troyer testified at trial that the tie rod broke due to a "fatigue fracture," which began when the rod was cracked or dented by a "single loading event," such as "bottoming out." Using enlarged photographs of portions of the tie rod, Troyer pointed to "beachmarks" or striations on the broken surface of the rod, which he testified were caused by repeated bending and cracking of the metal, and concluded that the rod broke sometime between one hour and several days after the initial crack was made.

At the close of appellant's evidence, General Motors made a motion for a directed verdict, which the trial court denied. General Motors then presented the testimony of Ohio State Trooper Ross Moser, Sergeant Fred Greive, and General Motors Engineer Alan Wilinski, and the deposition testimony of Ohio State Trooper Jerry P. Brown.

Moser testified at trial that appellant told him on April 30, 1990, one month after the accident, that he lost control of the Corvette when his tires dropped off the berm of the road. Brown testified in a deposition, portions of which were read into the record at trial, that he measured skid marks after the accident and concluded that appellant had been driving at a high rate of speed when he lost control, went off the road, and struck the tree.

After portions of Brown's deposition testimony were read, General Motors renewed its motion for a directed verdict. The trial court postponed ruling on the motion, pending a review of case law submitted by the parties.

Greive testified at trial that, based on measurements made by Brown and his own calculations, appellant was driving at between one hundred four and one hundred eleven miles per hour when he lost control of the Corvette. Greive stated that, in his opinion, "[appellant] was traveling at such a speed that when he tried to make somewhat of a turn or curve, he lost total control of the Corvette and the Corvette came around on him and he just couldn't control it." Greive further stated that he observed no unusual markings on the road such as those produced by a pronounced wheel alignment problem caused by a broken tie rod.

Wilinski testified at trial that he examined the broken tie rod with an electron microscope and determined that no fatigue striations existed and that the tie rod was pulled apart in "one big event," such as hitting a tree.

At the close of all the evidence, General Motors again renewed its motion for a directed verdict, and the trial court announced from the bench that the motion would be granted. The trial court stated:

"Nobody has testified in this case as to proximate cause of the accident * * *.

"The Courts and reasonable minds cannot differ, but must speculate as to whether the rod broke * * * or what time it broke, when it broke and must speculate as to whether or not a separation of the rod caused this car to go out of control, thus causing it to come into contact with the tree.

"* * *

"I cannot permit the jury to speculate about proximate cause in this case * * *."

On February 16, 1996, the trial court filed a judgment entry in which it granted General Motors' motion for a directed verdict and, on March 18, 1996, appellant filed a timely notice of appeal.

Appellant's first and second assignments of error will be considered together, since he asserts in both that the trial court erred by granting General Motors' motion to exclude the NHTSA report from evidence. In support thereof, appellant argues that portions of the report are admissible pursuant to Evid.R.

803(6) as "business records" of General Motors. Appellant further argues that the prejudicial effect of the report could have been minimized by making "pertinent portions or pages" available to the jury without telling the jury that the report was authored by a government agency. Finally, appellant argues that the report should have been allowed for the limited purpose of showing that General Motors had knowledge that its vehicles had a design defect, because the recall of the 1988 and 1989 model year vehicles was based on reports that certain vehicles from those model years lost control when rear tie-rod failure occurred.

General Motors responds that the trial court properly excluded the NHTSA report because the data and conclusions contained therein were not based on reports of vehicles which are substantially similar to appellant's 1986 model year Corvette, and therefore the report is not relevant in this case. General Motors further responds that the trial court properly concluded that the prejudicial effect of the report outweighed its probative value because "[t]he jury may have given an inordinate amount of weight" to a report produced by an agency of the federal government.

A motion *in limine* seeks a preliminary and temporary exclusion of evidence by the trial court. *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142. Generally, the admission or exclusion of evidence by a trial court will not be reversed on appeal absent a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493–494. "The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[3] *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

This court has previously stated that "[r]elevant evidence is generally admissible, irrelevant evidence is not. Evid.R. 402." *Wightman v. Consol. Rail Corp.* (Sept. 30, 1997), Erie App. No. E–97–001, unreported, 1997 WL 614962. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In addition, even if relevant, evidence is nevertheless inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." Evid.R. 403(A).

---

**3.** General Motors argues that this court cannot review the exclusion of the NHTSA report because appellant did not proffer the report at trial and it is therefore not part of the record on appeal. However, as set forth above, the report was included as an exhibit attached to appellant's memorandum in opposition to General Motors' motion *in limine*.

■■ The NHTSA report does not contain evidence that any design defect existed in the 1986 model year Corvette. In fact, the report concludes that although a rear tie-rod defect may exist in some 1988 and 1989 model year vehicles, it was not indicated for any vehicles produced in the 1984–1987 model years. Accordingly, evidence of rear tie-rod failure in 1988 and 1989 Corvettes is irrelevant to this case and is therefore inadmissible at trial. See *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31–32, 556 N.E.2d 150, 153–155 (Evidence of other accidents is generally inadmissible to establish the existence of a defect, a duty to warn, causation or negligent design, unless they are shown to have occurred under circumstances that are substantially similar to the case at bar.).

As for appellant's argument that portions of the report are admissible pursuant to Evid.R. 803(6) as General Motors' business records, even if certain documents contained in the report are business records, as set forth above, they are still inadmissible at trial because they are not relevant pursuant to Evid.R. 402. Further, appellant concedes in his appellate brief that "the report, as a whole, could have a prejudicial impact at trial."

This court has reviewed the entire record of proceedings which was before the trial court and, upon consideration thereof and the law, finds that the trial court did not abuse its discretion by granting General Motors' motions *in limine* and excluding the NHTSA report pursuant to Evid.R. 402 and 403. Accordingly, appellant's first and second assignments of error are not well taken.

Appellant asserts in his third assignment of error that the trial court erred by granting General Motors' motion to dismiss. Appellant argues in support thereof that "[t]he reasonable inference that was presented at trial was that there was a causal relationship" between Troyer's testimony that the tie rod separated due to a fatigue fracture and appellant's testimony that the Corvette's "unexplained jerk" caused him to lose control of the vehicle.

General Motors responds that appellant presented no evidence at trial that a failure of the tie rod caused him to lose control of his vehicle. General Motors argues that Zych's testimony directly contradicted appellant's theory that such an occurrence in a 1986 Corvette would necessarily cause its driver to lose control.

Pursuant to Civ.R. 50(A)(4), a motion for directed verdict will be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."

■■ A motion for a directed verdict presents a question of law, and an appellate court conducts a *de novo* review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961.

 In a products liability action, in order to survive a motion for directed verdict, the plaintiff must demonstrate that "(1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 6, 523 N.E.2d 489, 493.

 In this case, appellant testified that he first thought his car went out of control after the rear tire "dropped off" the road. Troyer testified only that the left tie rod broke because of a fatigue fracture. In contrast, Wilinski and Zych testified that the tie rod broke when the vehicle hit the tree, and Zych stated that even if the tie rod had broken before the accident, it would not have caused appellant to lose control of the Corvette. Other testimony established that appellant was traveling at an excessive rate of speed when he lost control of the vehicle.

Upon consideration, this court finds that the record contains no evidence that an alleged manufacturing or design defect in the left rear tie rod of appellant's 1986 Corvette was the direct and proximate cause of the accident in which appellant was injured. Accordingly, construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that General Motors is entitled to a directed verdict as a matter of law, and appellant's third assignment of error is not well taken.

On consideration whereof, this court finds further that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of these proceedings are hereby assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and KNEPPER, J., concur.