OPINION
{¶ 1} Plaintiff-appellant, John W. Struna, appeals from a judgment of the Court of Claims of Ohio that granted summary judgment in favor of defendant-appellee, Ohio Lottery Commission ("Lottery Commission"), on plaintiff's claims of fraud, negligent misrepresentation, respondeat superior, negligent supervision, negligence, unjust enrichment, and promissory estoppel, and the Lottery Commission's alleged violation of the Ohio Consumer Sales Practices Act ("OCSPA").
 {¶ 2} On October 25, 2001, plaintiff purchased 52 winning Buckeye 5 tickets, which matched all five numbers drawn for the lottery game, at a Convenient Food Mart in Euclid, Ohio.[1]
One other winning ticket matching all five numbers was sold to a person other than plaintiff. Therefore, plaintiff purchased 52 of the 53 total Buckeye 5 tickets matching all five drawn numbers. As a result of plaintiff's purchase of 52 winning tickets, he received, pursuant to Ohio Adm. Code 3770:1-9-22, approximately $981,000 in winnings (before taxes).
 {¶ 3} On January 28, 2002, plaintiff filed a complaint against the Lottery Commission, alleging various tort claims of fraud, negligent misrepresentation, respondeat superior, negligent supervision, negligence, as well as claims of unjust enrichment, promissory estoppel, and a violation of the OCSPA. Plaintiff claims entitlement to $5.2 million in winnings ($100,000 multiplied by 52 winning tickets). In the alternative, plaintiff seeks recovery of money that he spent on the Buckeye 5 game.
 {¶ 4} On May 28, 2003, the Lottery Commission moved for summary judgment against plaintiff regarding all of plaintiff's claims against the Lottery Commission alleged in this case. On July 11, 2003, the Court of Claims granted summary judgment in favor of the Lottery Commission. Plaintiff appeals from this judgment and assigns the following errors:
ASSIGNMENT OF ERROR NO. 1:
The trial court erred by dismissing Mr. Struna's Extra Contractual and/or Tort Claims.
ASSIGNMENT OF ERROR NO. 2:
The trial court erred in dismissing Mr. Struna's Claim for Negligent Supervision.
ASSIGNMENT OF ERROR NO. 3:
The trial court erred in dismissing Mr. Struna's Negligent Misrepresentation Claim.
ASSIGNMENT OF ERROR NO. 4:
The trial court erred in dismissing Mr. Struna's Fraud Claim.
ASSIGNMENT OF ERROR NO. 5:
The trial court erred in dismissing Mr. Struna's Claim for Respondeat Superior Liability.
ASSIGNMENT OF ERROR NO. 6:
The trial court erred in its review of the affidavit testimony and supporting materials OF Dr. Kenneth Levine and its conclusion that Mr. Struna's Claim under the Ohio Consumer Sales Practices Act fails as a Matter of Law.
ASSIGNMENT OF ERROR NO. 7:
The trial court erred in dismissing Mr. Struna's Claim for unjust enrichment.
 {¶ 5} An oral argument was held before this court regarding this appeal on January 28, 2004. Subsequently, on May 21, 2004, plaintiff filed a motion, pursuant to Civ.R. 60(B)(3), in the Court of Claims. On June 8, 2004, this court stayed the proceedings in this appeal, pending a determination of the Civ.R. 60(B) motion by the trial court. On September 9, 2004, the Court of Claims denied plaintiff's Civ.R. 60(B) motion, finding that plaintiff failed to establish an entitlement to relief from the court's judgment under Civ.R. 60(B)(3). On October 1, 2004, this court reactivated this appeal.
 {¶ 6} Appellate review of a lower court's granting of summary judgment is de novo. Hahn v. Satullo, 156 Ohio App.3d 412,2004-Ohio-1057, at ¶ 33. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland CitySchools Bd. of Edn. (1997), 122 Ohio App.3d 378, 383, citingDupler v. Mansfield Journal Co., Inc. (1980),64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962,101 S.Ct. 3111.
 {¶ 7} Summary judgment is proper when a movant for summary judgment demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 8} Plaintiff's first five assignments of error involve plaintiff's common law tort claims that he has asserted in this case, as well as an argument that plaintiff's OCSPA claim was improperly dismissed by the trial court. For the sake of simplicity, we will address these assignments of error together, but we will reserve our discussion of plaintiff's OCSPA claim to our disposition of plaintiff's sixth assignment of error.
 {¶ 9} The sale and purchase of lottery tickets is governed by the general principles of contract law. Peters v. Ohio LotteryComm. (1992), 63 Ohio St.3d 296, 299. "Simply stated, the state of Ohio `agrees' to pay the holder of a lottery ticket containing the winning numbers as chosen by the State Lottery Commission, the `jackpot' amount * * *. It is this promise which induces the purchase of the lottery tickets." (Footnote omitted.) Couchot v.State Lottery Comm. (June 30, 1994), Franklin App. No. 93APE09-1337, reversed on other grounds, Couchot v. StateLottery Comm. (1996), 74 Ohio St.3d 417. Thus, plaintiff's purchase of lottery tickets, including the 52 winning tickets, is subject to the law of contracts. Moreover, lottery "ticket holders, by their purchase and redemption, agree to be bound by the terms of the game." Woodbridge Partners Group, Inc. v. OhioLottery Comm. (1994), 99 Ohio App.3d 269, 273; see Board v.Ohio Lottery Comm. (Dec. 14, 1999), Franklin App. No. 99AP-208 ("lottery players are deemed to agree to abide by the terms of the game").[2] Pursuant to this case law, when plaintiff purchased the winning lottery tickets, he agreed to be bound by the promulgated rules and regulations of the Lottery Commission regarding Buckeye 5.
 {¶ 10} The "terms of the game" for "Buckeye 5" are set forth in Ohio Adm. Code 3770:1-9-22, which provides, in pertinent part, as follows:[3]
(D) Structure, nature and value of prize awards. Based upon the numbers drawn in each regular drawing for game number twenty-two, prizes shall be awarded to holders of valid tickets for that drawing as follows:
(1) For each ticket bearing a selection which matches two, and only two, of the five integers drawn, the prize is one dollar.
(2) For each ticket bearing a selection which matches three, and only three, of the five integers drawn, the prize is ten dollars.
(3) For each ticket bearing a selection which matches four, and only four, of the five integers drawn, the prize is two hundred fifty dollars
(4) For each ticket bearing a selection which matches all five integers drawn, the prize is one hundred thousand dollars.
The director shall have discretion to change the prizes and percentages which represent the prize pools in each of the categories referred to in paragraphs (D)(1), (D)(2), (D)(3) and (D)(4) of this rule.
* * *
(E) For each individual drawing there shall be a jackpot payout cap of one million dollars for tickets bearing selections which match all five integers drawn. If there are more than ten winners matching all five integers drawn, the total jackpot of one million dollars shall be divided by the number of winning tickets to determine the amount of the prize award for each winning ticket for that drawing.
 {¶ 11} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511, citing Davis v. Loopco Industries, Inc.
(1993), 66 Ohio St.3d 64, 66. Pursuant to Ohio Adm. Code3770:1-9-22, which provides the terms of the Buckeye 5 game, for each winning ticket that matches all five numbers the prize is $100,000.[4] However, Ohio Adm. Code 3770:1-9-22 provides a payout cap at $1 million for each individual Buckeye 5 drawing, with respect to tickets matching all five numbers, if there are more than ten tickets matching all five numbers.
 {¶ 12} According to plaintiff, this cap does not apply to his situation. Plaintiff argues that he did not know of the cap, and if he did know of the cap then he would not have purchased more than ten tickets per drawing. Plaintiff also alleges that agents of the Lottery Commission made misrepresentations to plaintiff, namely, that "each Buckeye 5 winning ticket of a match of all five (5) numbers paid One Hundred Thousand Dollars ($100,000)," and did not disclose the payout cap. (See Jan. 28, 2002 Complaint, paragraphs 30 and 31.) Plaintiff specifically alleged in his complaint that he "justifiably relied upon the conduct and misrepresentation of [the Lottery Commission], its authorized agents and employees in purchasing" in excess of $125,000 each year on Buckeye 5 tickets because it was his understanding that each Buckeye 5 ticket that matched all five numbers wins $100,000, without any limits or cap. (See id., paragraph 34.)
 {¶ 13} Plaintiff could not have reasonably relied upon any alleged representations by Convenient Food Mart employees that Buckeye 5 had no payout cap because the Ohio Administrative Code provides for the $1 million payout cap. Lottery players are on notice of the rules set forth in the Ohio Administrative Code. See Woodbridge, at 272. Under Ohio law, plaintiff was bound by the terms of the game, which includes the $1 million payout cap. Despite plaintiff's belief to the contrary, pursuant to the Ohio Administrative Code, a payout cap of $1 million applied to the Buckeye 5 game in which he purchased the winning 52 tickets.
 {¶ 14} Furthermore, "public officers cannot bind the state by acts outside their express authority." Drake v. Medical Collegeof Ohio (1997), 120 Ohio App.3d 493, 496, citing Kirk WilliamsCo. v. The Ohio State Univ. Bd. of Trustees (June 13, 1989), Franklin App. No. 88AP-697. Even assuming, arguendo, that the seller of the tickets to plaintiff was acting as an agent of the Lottery Commission, this person clearly had no express authority to change the rules of the Buckeye 5 game. For example, even if a retailer agent employee informed plaintiff that if he purchased 38 Buckeye 5 tickets he could win $3.8 million, such a statement did not change the rules of the Buckeye 5 game. Additionally, this court has stated that "[m]istaken advice or opinions of a governmental agent do not give rise to a claim based on promissory estoppel." Drake, citing Halluer v. Emigh (1992),81 Ohio App.3d 312.
 {¶ 15} Plaintiff's negligent supervision, negligent misrepresentation, respondeat superior liability, and common law negligence claims rely on the assumption that the Lottery Commission or one of its agents may have acted negligently by allegedly not informing plaintiff that Buckeye 5 has a $1 million payout cap with respect to winning tickets matching all five numbers. However, this assumption fails because plaintiff was on notice of the rules set forth in the Ohio Administrative Code regarding Buckeye 5, which include the payout cap. The tickets that plaintiff redeemed state that the lottery tickets, drawings, and prizes are subject to the rules and regulations of the Lottery Commission, and lottery advertisements refer players to the rules and regulations of the Lottery Commission.
 {¶ 16} Based on the foregoing, we conclude that the trial court did not err when it dismissed plaintiff's promissory estoppel claim as well as his tort claims, which include claims of fraud, common law negligence, negligent supervision, negligent misrepresentation, and respondeat superior liability. Accordingly, plaintiff's first, second, third, fourth, and fifth assignments of error are overruled.
 {¶ 17} By plaintiff's sixth assignment of error, he asserts that the lower court erred when it granted summary judgment on his OCSPA claim. In his complaint, plaintiff alleged that the Lottery Commission violated the Act by engaging in "unfair, deceptive, and unconscionable conduct." Plaintiff's argument that the Lottery Commission violated the OCSPA relies on the contention that plaintiff received inadequate notice of the payout cap or that he was misled into believing that no payout cap existed.
 {¶ 18} Plaintiff attached an affidavit of Dr. Kenneth Levine, who has a masters and doctorate in communication, to his brief in opposition to the Lottery Commission's motion for summary judgment. In the affidavit, Dr. Levine concluded that "the materials provided to consumers by the Ohio Lottery Commission (OLC) do not adequately or reasonably communicate to the consumer that the Buckeye 5 drawing has a one million dollar ($1,000,000) per drawing payout cap," and that it was "reasonable for Mr. Struna to rely upon the OLC's communications and advertisements to conclude that the Buckeye 5 drawing had no prize cap." (Plaintiff's Exhibit D.)
 {¶ 19} However, Dr. Levine's conclusions are inconsistent with Ohio law and do not consider the plain language of Ohio Adm. Code 3770:1-9-22(E). We again note that lottery players are on notice of the rules set forth in the Ohio Administrative Code, see Woodbridge at 272, and Ohio Adm. Code 3770:1-9-22(E) clearly provides a payout cap of $1 million for the Buckeye 5 game with respect to tickets matching all five numbers. When plaintiff purchased the winning lottery tickets, he agreed to be bound by the promulgated rules and regulations of the Lottery Commission regarding Buckeye 5.
 {¶ 20} Furthermore, plaintiff's contention that he was deceived by representations of persons employed at Convenient Food Mart is without merit because there is no evidence that these persons possessed the authority to modify the terms of the Buckeye 5 game, and because plaintiff was on notice of the terms of the Buckeye 5 game (Ohio Adm. Code 3770:1-9-22), which includes the $1 million payout cap. Thus, plaintiff's OCSPA claim fails as a matter of law. Based on the foregoing, we overrule plaintiff's sixth assignment of error.
 {¶ 21} By plaintiff's seventh assignment of error, plaintiff asserts that the trial court erred when it dismissed his claim for unjust enrichment. In his complaint, plaintiff alleged that the Lottery Commission has been unjustly enriched by its possession of the difference between what plaintiff received with the application of the $1 million payout cap and what plaintiff would have received without an application of the payout cap.[5]
 {¶ 22} "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." Turner v. Langenbrunner, Warren App. No. CA2003-10-099, 2004-Ohio-2814, at ¶ 38, citing UniversityHospitals of Cleveland, Inc. v. Lynch, 96 Ohio St.3d 118,2002-Ohio-3748, at ¶ 60. The amount of money plaintiff was entitled to with respect to his 52 winning tickets, which is the subject matter of plaintiff's unjust enrichment claim, was governed by the terms of the contract between plaintiff and the Lottery Commission. Consequently, the unjust enrichment doctrine has no application to this case. Accordingly, plaintiff's seventh assignment of error is overruled.
 {¶ 23} For the foregoing reasons, plaintiff's seven assignments of error are overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
Bowman and Bryant, JJ., concur.
[1] Plaintiff purchased the same five-number combination on 52 separate lottery tickets.
[2] The tickets purchased in this case contained language stating, "[a]ll tickets, drawings, and prizes are subject to the Rules and Regulations of the Ohio Lottery Commission." See copies of the purchased and redeemed winning lottery tickets, attached to plaintiff's complaint as Exhibit A.
[3] We observe that Ohio Adm. Code 3770:1-9-22 was amended on September 30, 2004. However, these amendments are not relevant to the case at bar.
[4] No party contends that the director changed the prizes referred to in paragraphs (D)(1), (D)(2), (D)(3), or (D)(4) of Ohio Adm. Code 3770:1-9-22.
[5] Plaintiff referred to this amount as the "Balance of Winnings."