STRUNA, Appellee and Cross–Appellant,

v.

CONVENIENT FOOD MART et al., Defendants–Appellants and Cross–Appellees.

[Cite as *Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84886.

Decided April 21, 2005.

Reminger & Reminger Co., L.P.A., Andrew A. Kabat, Franklin C. Malemud, and James O'Connor; Weltman, Weinberg & Reis and Donald A. Mausar, for appellee and cross-appellant.

Henkin & Seewald and J. Gary Seewald, for appellants and cross-appellees.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Defendants-appellants and cross-appellees, Convenient Food Mart, Amanpreet, Inc., Harleen, Inc., and Harjinder Singh (collectively, "CFM"), appeal from the trial court's denial of their motions for directed verdict, judgment notwithstanding the verdict, or in the alternative, a new trial, following a jury verdict in favor of plaintiff-appellee/cross-appellant, John Struna, on his claims for fraud, violations of Ohio Consumer Sales Practice Act ("OCSPA"), and unjust enrichment. We find merit to the appeal and reverse the trial court's denial of CFM's motion for a directed verdict.

{¶ 2} On October 25, 2001, Struna purchased 52 winning "Buckeye 5" tickets, with the same five-number combination on each lottery ticket, at Convenient Food Mart in Euclid. As a result of his purchase of 52 of the 53 winning tickets, he won approximately $981,000.[1]

{¶ 3} Struna filed suit against Convenient Food Mart ("CFM") and its owner, Harjinder Singh, alleging, inter alia, fraud, violations of OCSPA, and unjust enrichment.[2] Struna sought compensatory and punitive damages, claiming that Singh and other CFM employees never informed him of the $1 million payout cap for the Buckeye 5 game and that they intentionally misrepresented that there was no cap to induce his purchasing more tickets. He further claimed that had he known of the $1 million cap, he would have purchased only ten tickets with the same five-number combination, rather than his average of 50 tickets per drawing.

{¶ 4} The matter proceeded to trial, and the jury found in favor of Struna on his fraud and OCSPA claims and awarded him $250,000 in compensatory and $1,100,000 in punitive damages. The jury further awarded him $22,000 on his unjust-enrichment claim.

{¶ 5} CFM appeals, raising two assignments of error, and Struna cross-appeals, arguing one assignment of error.

{¶ 6} In its first assignment of error, CFM contends that the trial court erred in denying its motion for a directed verdict on all three claims. The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reason-

---

1. The other winning lottery ticket was sold to another person.

2. Struna also named Amanpreet, Inc., the corporation that owned CFM at the time that he purchased the winning tickets, and Harleen, Inc., the successor corporation, as defendants.

able minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 7} A motion for directed verdict tests the legal sufficiency of the evidence presented; accordingly, neither the weight of the evidence nor the credibility of witnesses may be considered. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610, citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. In addition, all reasonable inferences that may be drawn from the evidence must be made in favor of the nonmoving party. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 21 OBR 345, 487 N.E.2d 920. If substantial, competent evidence has been presented from which reasonable minds could draw different conclusions, the motion must be denied. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252.

{¶ 8} Because a directed verdict presents a question of law, we review the trial court's judgment de novo. *Hardy v. Gen. Motors Corp.* (1998), 126 Ohio App.3d 455, 462, 710 N.E.2d 764, citing *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957.

{¶ 9} CFM argues that the trial court should have granted its motion for a directed verdict on all of Struna's claims because (1) Struna was not justified in relying on Singh's alleged representations of the lottery rules, (2) Struna was bound by the contract terms of the lottery ticket, (3) Struna lacked standing to assert any claim under the OCSPA, and (4) the existence of a valid contract negated any claim of unjust enrichment.

{¶ 10} In *Struna v. Ohio Lottery Comm.*, Franklin App. No. 03AP–787, 2004-Ohio-5576, 2004 WL 2361570, ¶ 9 discretionary appeal not allowed,[3] the Tenth District Court of Appeals succinctly set forth the law governing participation in the lottery as follows:

The sale and purchase of lottery tickets is governed by the general principles of contract law. *Peters v. Ohio Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290. "Simply stated, the state of Ohio 'agrees' to pay the holder of a lottery ticket containing the winning numbers as chosen by the State Lottery Commission, the 'jackpot' amount * * *. It is this promise which induces the purchase of the lottery tickets." (Footnote omitted.) *Couchot v. State Lottery Comm.* (June 30, 1994), Franklin App. No. 93APE09–1337 [1994 WL 314098, 1994 Ohio App. LEXIS 2844], reversed on other grounds, *Couchot v. State Lottery Comm.* (1996), 74 Ohio St.3d 417, 1996-Ohio-262, 659 N.E.2d 1225. Thus, plaintiff's purchase of lottery tickets, including the 52 winning tickets, is

---

3. This case is a related action Struna commenced against the Lottery Commission involving the same subject matter as the within case.

subject to the law of contracts. Moreover, lottery "ticket holders, by their purchase and redemption, agree to be bound by the terms of the game." *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm.* (1994), 99 Ohio App.3d 269, 273, 650 N.E.2d 498; see *Board v. Ohio Lottery Comm.* (Dec. 14, 1999), Franklin App. No. 99AP–208 [1999 WL 1140294, 1999 Ohio App. LEXIS 5979] ("lottery players are deemed to agree to abide by the terms of the game").[4]

{¶ 11} Thus, by virtue of Struna's purchase and presentation of the lottery tickets for redemption, he agreed to be bound by the terms and conditions of the Buckeye 5 game, as set forth in Ohio Adm.Code 3770:1–9–22, which provides:

(D) Structure, nature and value of prize awards. Based upon the numbers drawn in each regular drawing for game number twenty-two, prizes shall be awarded to holders of valid tickets for that drawing as follows:

(1) For each ticket bearing a selection which matches two, and only two, of the five integers drawn, the prize is one dollar.

(2) For each ticket bearing a selection which matches three, and only three, of the five integers drawn, the prize is ten dollars.

(3) For each ticket bearing a selection which matches four, and only four, of the five integers drawn, the prize is two hundred fifty dollars.

(4) For each ticket bearing a selection which matches all five integers drawn, the prize is one hundred thousand dollars.

The director shall have discretion to change the prizes and percentages which represent the prize pools in each of the categories referred to in paragraphs (D)(1), (D)(2), (D)(3) and (D)(4) of this rule.

\* \* \*

(E) For each individual drawing there shall be a jackpot payout cap of one million dollars for tickets bearing selections which match all five integers drawn. If there are more than ten winners matching all five integers drawn, the total jackpot of one million dollars shall be divided by the number of winning tickets to determine the amount of the prize award for each winning ticket for that drawing.

{¶ 12} At trial, Struna presented evidence that Singh, who owned and operated CFM, misrepresented the Buckeye 5 rules by stating that there was no payout cap.[5] He further produced evidence that as a result of such misrepresentations,

---

4. The *Struna* court also noted that the 52 tickets purchased by Struna contained language that "[a]ll tickets, drawings, and prizes are subject to the Rules and Regulations of the Lottery Commission."

5. Struna also testified that, in addition to Singh, another CFM employee told him that there was no payout cap and that he could win $100,000 for each ticket that matched all five numbers in the Buckeye 5.

he purchased an average of 50 tickets per drawing, resulting in his spending approximately $206,000 at the store during the past three years.

{¶ 13} However, in applying the above case law and the "rules of the game," we find that Struna's fraud claim fails as a matter of law. In order to prevail on his fraud claim, Struna had to prove that he justifiably relied on Singh's representations of the Buckeye 5 rules. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus (justifiable reliance upon the representation or concealment is a material element of fraud). Because Struna agreed to be bound by the rules and regulations of the game, which included the $1 million payout cap, he was not justified in relying on Singh's misrepresentation to the contrary. *Struna,* supra, 2004-Ohio-5576, ¶ 13; see, also, *Greathouse v. E. Liverpool,* 159 Ohio App.3d 251, 2004-Ohio-6498, 823 N.E.2d 539 (plaintiff could not justifiably rely on employer's misrepresentations of employee benefits when such representations were contrary to law). Moreover, Singh had no express authority to change the rules of the game, even as a licensed agent of the lottery. *Struna,* supra, 2004-Ohio-5576, ¶ 14. Thus, Struna's reliance on the misrepresentations of a person without authority to modify the rules negates any claim of justifiable reliance. Accordingly, the trial court should have directed a verdict in CFM's favor.

{¶ 14} As to Struna's claims of violations of the OCSPA, we reach the same conclusion. Struna alleged that CFM engaged in "unfair, deceptive, and unconscionable conduct" in violation of R.C. 1345.02 and 1345.03. In support of these allegations, Struna relied on the same conduct supporting the fraud claim, i.e., CFM employees making material misrepresentations as to the rules of the Buckeye 5 game to sell more tickets.

{¶ 15} However, as discussed above, lottery players are on notice of the rules set forth in the Ohio Administrative Code and are deemed to follow the rules. Further, courts shall apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct. *Conley v. Lindsay Acura* (1997), 123 Ohio App.3d 570, 575, 704 N.E.2d 1246. Accordingly, Struna's claim of an unfair and deceptive act fails as a matter of law because he was on notice of the $1 million payout cap (Ohio Adm.Code 3770:1–9–22), and he presented no evidence that Singh or any other CFM employee had the authority to modify the rules. *Struna,* supra, 2004-Ohio-5576, ¶ 20. Thus, we find that a lottery player, who is presumed to know the rules of the game, cannot be deceived by misrepresentations made by a person without authority to modify the rules.

{¶ 16} Similarly, his claim that CFM's conduct was unconscionable fails because, even though Singh made a misleading statement as to the rules of the game, Struna was on notice of the rules as provided in the Ohio Administrative

Code and as contained on the Ohio Lottery website. Accordingly, as a matter of law, Struna could not reasonably rely on any representations that contradicted the Lottery Commission's promulgated rules and regulations.[6]

{¶ 17} In finding that Struna's OCSPA claims fail as a matter of law, we decline to reach the issue of standing.

{¶ 18} Finally, we find that the trial court should have directed a verdict on Struna's unjust-enrichment claim. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate that (1) the claimant conferred a benefit upon the recipient, (2) the recipient had knowledge of that benefit, and (3) circumstances render it unjust or inequitable to permit the recipient to retain the benefit without compensating the party who conferred it. *N. Olmsted City School Dist. Bd. of Edn. v. Cleveland Mun. School Dist. Bd. of Edn.*, Cuyahoga App. No. 84372, 2004-Ohio-6422, 2004 WL 2757638, citing *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.

{¶ 19} Struna's unjust-enrichment theory was based on the commission CFM received for his purchase of Buckeye 5 tickets (5.5% on each $1 ticket) combined with the amount it received in bonuses for each of the 52 winning tickets ($500 per ticket). However, Struna did not confer this benefit on CFM; rather, the Lottery Commission did. Furthermore, although the Lottery Commission would not have conferred this benefit absent Struna's purchase of the tickets, any benefit Struna claimed in connection with the Buckeye 5 tickets was governed by the express terms of the contract. Accordingly, we find that his claim of unjust enrichment fails as a matter of law.

{¶ 20} The first assignment of error is sustained.

{¶ 21} Given our disposition of the first assignment of error, we find that CFM's remaining assignment of error—that the verdict was against the manifest weight of the evidence, and Struna's cross-assignment of error relating to the issue of treble damages are moot.

{¶ 22} The judgment is reversed. The case is remanded for entry of judgment for appellants.

Judgment reversed
and cause remanded.

Celebrezze Jr., P.J., and Timothy E. McMonagle, J., concur.

---

6. While we are not condoning CFM's misrepresentation, we follow Ohio law, which recognizes that those who participate in the lottery are responsible for understanding the rules and regulations of the game. Those who rely on other persons do so at their own risk, knowing that the promulgated rules and regulations of the Lottery Commission will govern any dispute.