OPINION
{¶ 1} Appellant, Sean McPhillips, appeals from the August 10, 2006 judgment entry of the Lake County Court of Common Pleas, denying his motion for summary judgment, and granting the motion for summary judgment of appellees, United States Tennis Association Midwest ("Midwest Association") and United States Tennis Association Northeast ("Northeast Association"). *Page 2 
 {¶ 2} On April 15, 2005, appellant, a senior at St. Ignatius High School, paid a fee and joined the United States Tennis Association ("National Association"), an adult tennis league operated by appellees.[1] The National Association permits players to self-rate so that they can compete at an appropriate level for their particular tennis skills. Appellant chose to play on the Club Ultimate 4.0 men's team, thus, "self-rating" himself, based upon the recommendation of his father, at a 4.0 level. He participated in two matches at that level. On June 20, 2005, after appellant's first match, he was informed that because he had self-rated at 4.0 he was supposed to have completed a player background form prior to participating in a league match. Appellant completed and submitted the form the following day. Shortly thereafter, appellant's self-rating was denied, and he was rated at a 4.5 "elite" level. Appellant was provided an appeal form but did not pursue an appeal.
 {¶ 3} Rather, on June 28, 2005, appellant filed a complaint against appellees, alleging that appellees violated the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 and R.C. 1345.02, (1) by instituting practices that contradicted the published rules regarding eligibility for participation, and (2) by denying him a benefit that was advertised, namely the opportunity to participate on a diverse tennis team. Appellees filed an answer on August 15, 2005.
 {¶ 4} On October 17, 2005, appellant filed a motion for summary judgment pursuant to Civ.R. 56. *Page 3 
 {¶ 5} On December 23, 2005, appellees filed a motion for summary judgment and a brief in opposition to appellant's motion for summary judgment.
 {¶ 6} On January 27, 2006, appellant filed a brief in opposition to appellees' motion for summary judgment and a reply to appellees' brief in opposition to appellant's motion for summary judgment.
 {¶ 7} On February 13, 2006, appellees filed a reply brief in support of their motion for summary judgment.
 {¶ 8} Pursuant to its August 10, 2006 judgment entry, the trial court granted appellees' motion for summary judgment, and denied appellant's motion for summary judgment. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 9} "The trial court erred in granting [s]ummary [j]udgment in favor of [a]ppellee[s]."
 {¶ 10} In his sole assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees. He alleges that it is a violation of the CSPA for a tennis association to fail to abide by specific written statements and promises that were made to a consumer as part of a membership solicitation and/or the rules and regulations of the association.
 {¶ 11} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 12} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such *Page 4 
evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 13} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296:
 {¶ 14} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 15} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id. *Page 5 
 {¶ 16} The law favors a citizen's right to trial by jury except in cases where reasonable minds can come to but one conclusion. One must, if intellectually true to the Civ.R. 56 analysis, assume as true all facts in evidence on behalf of the non-moving party. Summary judgment is not a case management tool to be utilized by trial courts, but must be used sparingly. The trial court may not engage in a weighing of the evidence or a determination of whether a party may be successful at trial in meeting its ultimate legal burden. Once evidence is presented by the non-moving party as to any element of the claim, the final determination of whether a plaintiff or defendant is ultimately successful lies in the exclusive control of the finder of fact at trial.
 {¶ 17} R.C. 1345.01 includes, in part, the following definitions:
 {¶ 18} "As used in sections 1345.01 to 1345.13 of the Revised Code:
 {¶ 19} "(A) `Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. * * *
 {¶ 20} "* * *
 {¶ 21} "(C)`Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. * * *
 {¶ 22} "(D)`Consumer' means a person who engages in a consumer transaction with a supplier."
 {¶ 23} R.C. 1345.02, which deals with unfair or deceptive consumer sales practices, provides in part: *Page 6 
 {¶ 24} "(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 {¶ 25} "(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
 {¶ 26} "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have[.]"
 {¶ 27} "When determining whether an act or practice is deceptive, courts look at the incident from the consumer's standpoint."Chestnut v. Progressive Cas. Ins. Co., 166 Ohio App.3d 299,2006-Ohio-2080, at ¶ 23. "The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract.'" Id., quoting Mannix v. DCB Serv., Inc., 2d Dist. No. 19910,2004-Ohio-6672. "Furthermore, a deceptive act`has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" Chestnut, supra, at ¶ 23, quoting McCullough v. Spitzer MotorCtr (Jan. 27, 1994), 8th Dist. No. 64465, 1994 Ohio App. LEXIS 262. "* * * [C]ourts shall apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct."Struna v. Convenient Food Mart, 160 Ohio App.3d 655, 2005-Ohio-1861, at ¶ 15, citing Conley v. Lindsay Acura (1997), 123 Ohio App.3d 570,575.
 {¶ 28} In the case at bar, we agree with appellant that the parties engaged in a "consumer transaction," since appellees provide a "service" to "consumers," "solicit" individuals, and are "suppliers." See R.C.1345.01(A), (C), and (D). However, we do not agree with appellant that appellees violated R.C. 1345.02, by engaging in an "unfair *Page 7 
or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A).
 {¶ 29} With respect to the self-rating process, appellee Northeast Association provided clear rules and regulations regarding registration and participation it its adult tennis leagues, which supplement those provided from the National Association. The rules promulgated by appellee Northeast Association provide:
 {¶ 30} "1.46 Players who do not have a computer rating on file inTennisLink shall self-rate in accordance with the National Tennis RatingProgram (NTRP) Guidelines and declare their self rating on TennisLinkwhen registering for a team. Individuals who have had a national orsection ranking; played college tennis; have taught tennis; or playedprofessional tennis must also complete a player history form and submitto the section and receive approval from the section to participate attheir self-rated level before participating in a match. Failure to do soor omission of information regarding a player's tennis history willsubject the player, the captain and/or others who condoned inaccurateself-rating to sanctions and disqualification.
 {¶ 31} "Note: this form must be submitted to the DLC for allself-rated players playing on levels of 4.0 and higher (includescombinations for mixed, super seniors, and combos)." (Emphasis sic.)
 {¶ 32} Based on the foregoing, because appellant self-rated at 4.0, he was required to complete a player background form prior to participating in a league match. It is undisputed that appellant failed to complete the form prior to his first match. After he completed the required form, it was determined that his appropriate rating was 4.5. *Page 8 
He was offered the opportunity to participate on a 4.5 level team but he took no action on appellees' offer.
 {¶ 33} Appellee Northeast Association ensured that the registration requirements were easily accessible to both league players and to the captains of all league teams on various web pages, which included both text and audio files. None of the rules and regulations promulgated by appellees provided that a league participant was guaranteed the right to play on a particular team or level of his choosing. We note that appellant's "self-rating" decision was actually made by his father. Also, appellant admitted that he never visited the website of appellee Northeast Association.
 {¶ 34} In addition, appellant alleges that he chose Club Ultimate's 4.0 men's team because of its convenient location, his familiarity with the players, and its diversity. According to appellant's deposition, however, the only factors he indicated that he considered were his father's advice, the team's location, and his familiarity with some of the players on the team. His deposition did not mention that the team's diversity was a motivating factor in his decision to join Club Ultimate 4.0. Appellant attempted to bolster his deposition testimony by providing an affidavit from his father, who attested to the fact that he had recommended that appellant join Club Ultimate 4.0 so that he could experience the team's diversity. However, the trial court properly noted in its August 10, 2006 judgment entry that "the motivation of [appellant's] father in suggesting the 4.0 team is irrelevant in considering the motivation of [appellant] himself."
 {¶ 35} Even assuming that appellant did join Club Ultimate 4.0 in order to experience the team's diversity, he failed to present any evidence that appellees' actions deprived him of this opportunity. Again, when appellant's 4.0 self-rating was *Page 9 
denied, he was offered the opportunity to join a 4.5 level team. Appellant neither investigated that option nor inquired as to whether a 4.5 level team would meet his desire to participate on a diverse team.
 {¶ 36} Based on the evidence presented, it is unreasonable to believe that appellees violated the CSPA by denying appellant the opportunity to play on a racially diverse tennis team. We do not agree with appellant that appellee Midwest Association failed to oversee and ensure that appellee Northeast Association complied with the rules, regulations, and promises of the National Association with respect to the membership contract of appellant.
 {¶ 37} The trial court properly granted appellees' motion for summary judgment.
 {¶ 38} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.
[1] Appellee Northeast Association is a local affiliate of the National Association. Appellee Midwest Association is the regional governing body which supervises the National Association programs in Ohio, Wisconsin, Illinois, Indiana, and Michigan. The National Association is not a party to this action. Appellant, who began playing tennis at the age of ten, had an extensive tennis background. He was coached by his father who is an accomplished tennis player. During high school, appellant played varsity tennis and regularly participated in tennis tournaments. *Page 1