

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IGNATIUS J. LEONE

    Plaintiff

    v.

OHIO LOTTERY COMMISSION

    Defendant

Case No. 2010-12338

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action alleging unjust enrichment arising out of defendant's operation of a lottery game that he claims to have developed. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff is a self-employed home-improvement contractor who resides in Parma Heights, Ohio. Plaintiff testified that in early 2003, he developed an idea for a lottery game. Plaintiff stated that several weeks later, he had an attorney file a provisional patent application for a "Lottery Number Game" on his behalf with the United States Patent and Trademark Office. (Plaintiff's Exhibit 2.) The application is broadly worded and difficult to understand, but it generally describes an idea that involves a game administrator arranging an array of numbers in a matrix and then selecting a set of numbers from within the array; players may win if a previously-determined set of numbers (the application does not clearly define how these numbers are chosen by the player or otherwise determined) either matches the set selected by the administrator or appears in a particular arrangement within the matrix. The size of the matrix is not

defined but "five-by-four" and "five-by-six" rectangular grids are identified as possibilities, nor is the size of the number array or winning number set defined (potential arrays are identified as 1-20, 1-40, and 1-45, and the size of the winning number set is suggested as "5, 6, 7 or more").  The application identifies various "embodiments" of the idea, and notes that the game may or may not be played in a "scratch-off" ticket format.

{¶ 3} In his testimony at trial, plaintiff acknowledged that there are similarities between his idea and bingo, as well as defendant's Pick 5 and Pick 6 lottery games, but he explained that his idea can be distinguished from bingo because its matrix is comprised of numbers rather than letters.  Plaintiff, who has no formal background in statistics, acknowledged that his preliminary patent application does not set out certain mathematical details such as the odds, probabilities, or prize structures necessary for lottery games, and that he had no idea how the odds would be determined.

{¶ 4} Plaintiff testified that he discussed his game idea with several family members and others, including a friend who had once worked for defendant, and that the friend advised him to get in touch with Dennis Berg, an employee of defendant. Plaintiff stated that he telephoned Berg and that after a series of calls and e-mails, they arranged a meeting at defendant's headquarters in Cleveland; according to their e-mails, the meeting took place in May 2003.  (Plaintiff's Exhibits 3, 4.)  According to plaintiff, his intention in meeting with Berg was to market his idea for sale, but they did not discuss any sales terms.  Plaintiff recalled that after showing Berg the provisional patent application, Berg stated that he would have other employees of defendant analyze the idea, and that Berg assured him that the idea would remain confidential and that defendant would not appropriate it.

{¶ 5} Plaintiff testified that he telephoned Berg several weeks later to follow up and was told that defendant's mathematicians were evaluating the idea.  Plaintiff further testified that he called Berg a few weeks later and was told that defendant's mathematicians found the idea unworkable, and that Berg referred him to GTECH

Corporation, a Rhode Island-based gaming vendor with whom defendant regularly did business. Plaintiff recalled that he gave his authorization to Berg to have defendant forward his provisional patent application to GTECH. Plaintiff testified that he had telephone conversations with employees of GTECH, but that he was ultimately informed that GTECH also found the idea unworkable. Plaintiff stated that he consequently became discouraged about the idea and let his provisional patent application expire. According to plaintiff, about one year after his discussions with defendant and GTECH, he heard a radio commercial for defendant which promoted a game known as Lot 'O Play, which he believed to resemble his idea. Plaintiff stated that he contacted his counsel later that same day, eventually leading to his filing the instant lawsuit.

{¶ 6} The Lot 'O Play game, in short, involved a player purchasing a $2 ticket that displayed a square matrix of five rows, each containing five numbers ranging from an array of 0 to 99; players had the option of choosing five of the numbers or allowing all numbers to be randomly selected. Twice a week, drawings were held to select five winning numbers. If the winning numbers were matched in a row vertically, horizontally, or diagonally within the grid, the ticket was a jackpot winner. Lower-tier prizes were awarded for tickets that matched two, three, or four of the winning numbers. Additionally, every hundredth ticket sold throughout the state was an instant $10 winner. Tickets went on sale on October 9, 2005. (Plaintiff's Exhibit 17.) The game has since been discontinued.

{¶ 7} Plaintiff presented expert witness testimony by way of deposition from Thomas H. Short, Ph.D., a professor of statistics at John Carroll University. Dr. Short testified that rather than describing a viable lottery game, plaintiff's preliminary patent application sets forth a basic, general structure from which many different lottery games can be generated. Dr. Short opined that Lot 'O Play is a "specific realization" of the idea described in the application. Dr. Short acknowledged, though, that hundreds of other games, including bingo, can be generated from the description set out in the application.

Dr. Short also acknowledged that, while lottery games must have prize structures, the application provides no information in this regard.

{¶ 8} Dennis Berg testified by way of deposition that he has been employed with defendant since 1991, holding a series of positions beginning with internal audit manager, then a "policy staff" member assigned to special projects by the director, finance director from 2004 to 2010, interim director from 2011 to 2012, and now director. Berg holds an accounting degree and is a certified public accountant (CPA). Berg testified that he believes he first spoke with plaintiff around the spring of 2003, as a result of plaintiff calling on the telephone about a game idea that he wanted to share. Berg stated that he did not agree to meet with plaintiff at that time, but that after receiving several more calls from plaintiff, he set up the May 2003 meeting. According to Berg, there was no formal protocol that addressed this sort of unsolicited idea from a member of the public, but he recalled having similar discussions with perhaps three such individuals during his tenure on the policy staff.

{¶ 9} Berg testified that when plaintiff shared his preliminary patent application with him at their meeting, he found its concept to be "very confusing." Berg further testified that he does not recall plaintiff suggesting a name for the game, that he did not have plaintiff sign any documentation at the meeting, and that he did not know what plaintiff's intentions were as far as whether he sought to profit from the idea. Berg forwarded the application to defendant's Product Development Department for analysis and through an e-mail expressed his initial thoughts, including potential benefits and drawbacks of the game idea. (Plaintiff's Exhibit 4.) Berg recalled that Sharon Murray, an employee in the Product Development Department, sent him an e-mail stating that the information provided was not thorough enough to perform a proper analysis. (Plaintiff's Exhibit 6.) According to e-mails between Berg and Murray, she contacted plaintiff in an attempt to obtain more specific details about his idea, but she ended up

concluding that his idea was too vague to adequately assess. According to Berg, he was not actively involved in the development or marketing of the Lot 'O Play game.

{¶ 10} Dennis Kennedy testified by way of deposition that he was employed with defendant from 1976 to 1996, and again from 1999 to 2004, including four years of service as the director from 2000 to 2004. Kennedy, who has a degree in accounting and is a CPA, now serves as the finance director for the city of Solon, Ohio. Kennedy testified that during his tenure as director, defendant undertook the process of replacing its Super Lotto Plus game (which had declined in popularity after the introduction of the Mega Millions game in 2002) with a different type of game that would appeal particularly to individuals who enjoyed playing bingo and keno.

{¶ 11} Kennedy stated that, with the assistance of others including Assistant Director Connie Miller and Darick Cornelious of GTECH, he developed a game that was conceptually similar to bingo and keno, but still different from those games. Kennedy recalled that GTECH or another vendor calculated the odds and performed other mathematical functions. Kennedy explained that the development of this game was something of a departure from the manner in which games were usually designed, whereby vendors, namely GTECH for online games and Scientific Games, Inc. for instant tickets, worked in conjunction with defendant's Product Development Department. Kennedy also stated that he believes any unsolicited ideas from the public would, at that time, have been referred to the Product Development Department.

{¶ 12} Kennedy testified that his tenure as director ended before the new game was introduced to the public, and that he did not know what would come of the project upon his departure. He stated that the game was conceptually the same as the version of Lot 'O Play that was ultimately introduced to the public, but that some of the details were different than in the design he worked on. Kennedy acknowledged that defendant's chief legal counsel, Quan Kirk, sent him a letter in mid-2005, after his time as director had ended but before the introduction of Lot 'O Play, asking for information

about the origins of the game and any knowledge he had of plaintiff's game idea. According to Kennedy's response to Kirk, he was not aware of plaintiff or his game idea, and he explained the process by which Lot 'O Play was developed.  (Plaintiff's Exhibit 14.)

{¶ 13} Thomas Hayes testified by way of deposition that after many years of service with several governmental agencies, he was appointed to succeed Kennedy as defendant's director in January 2005 and remained in the position until August 2006. Hayes stated that he was not aware of any member of the public having proposed an idea for a "similar game," or any other game for that matter, during his tenure, and that he had no recollection of Kirk reviewing plaintiff's game idea vis-à-vis the development of Lot 'O Play in the months leading up to its public rollout.  Hayes further stated that although game development was generally performed by vendors and the Product Development Department, during his time as director he recommended a game that ended up being used.

{¶ 14} Hayes testified that his involvement in bringing the Lot O' Play game to market included submitting the game for approval by the Ohio Joint Committee on Agency Rule Review.  He also acknowledged that defendant and GTECH became involved in some sort of dispute over Lot 'O Play which prompted him to send a letter to GTECH expressing disappointment in an unspecified "patent issue."  Hayes testified that he could not recall the nature of the patent issue, though, stating that it might have pertained either to GTECH attempting to use Lot 'O Play in other states or to plaintiff's preliminary patent application.  With respect to the discontinuation of Lot 'O Play in 2006, Hayes stated that he cannot recall exactly why it occurred but he remembers that the game "wasn't performing well."

{¶ 15} Plaintiff's complaint asserts one count of unjust enrichment.  "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from

retaining money or benefits that in justice and equity belong to another." *Struna v. Ohio Lottery Comm.*, 10th Dist. No. 03AP-787, 2004-Ohio-5576, ¶ 22, quoting *Turner v. Langenbrunner*, 12th Dist. No. CA2003-10-099, 2004-Ohio-2814, ¶ 38. "A plaintiff seeking to recover under unjust enrichment or quantum meruit must establish that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to permit the defendant to retain the benefit without payment." *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 37 (10th Dist.). Additionally, the court notes that a claim of unjust enrichment may be displaced by the statutory remedies provided for in the Ohio Uniform Trade Secrets Act if the claim is based upon the "misappropriation" of a "trade secret" as those terms are defined in R.C. 1333.61. *Columbus Steel Castings Co. v. King Tool Co.*, 10th Dist. No. 08AP-385, 2008-Ohio-6309, ¶ 11.

{¶ 16} Upon review, regardless of whether plaintiff's complaint sounds in unjust enrichment or misappropriation of a trade secret, the court finds that the greater weight of the evidence does not demonstrate that plaintiff is entitled to recovery. The court finds that defendant neither used nor benefitted from plaintiff's game idea, and that the idea lacks independent economic value. The idea set forth in plaintiff's provisional patent application is confusing, vague, lacking basic details required of a functional lottery game, and presents a general concept that had already been used in games of chance; and, when defendant asked plaintiff to clarify his idea and provide more details, he was unable to do so. As Dr. Short acknowledged, the application does not describe a game, but rather presents a basic "structure" that can take hundreds of different forms and actually encompasses existing games of chance such as bingo. Indeed, the provisional patent application acknowledges that "[s]ome games of chance do employ a matrix, wherein the location of one or more of the number set determines outcome." (Plaintiff's Exhibit 2.)

{¶ 17} Moreover, the court finds that Lot 'O Play is distinctly different from plaintiff's game idea, such as in the way that plaintiff's idea apparently has the game administrator arrange a matrix that applies to all players, rather than each player being issued a different matrix which the player has the ability to partially arrange (plaintiff's application, in fact, says very little about the player's involvement in selecting numbers). Plaintiff's idea seemingly has the entire number array arranged in the matrix, while the matrices in Lot 'O Play included only 25 of the 100 numbers in the array. While plaintiff's application identified four-by-five and five-by-six matrices and 1-20, 1-40, and 1-45 arrays as examples of how the game could be played, Lot 'O Play had a five-by-five matrix and a much larger number array of 0-99. Lot 'O Play also included an instant win feature (making every hundredth ticket sold an instant winner) and a feature whereby players would win a prize for matching some, but not all, of the drawn numbers, and plaintiff's application makes no reference to such features. And, unlike the vague, incomplete concept in the preliminary patent application, Lot 'O Play had clearly defined instructions, odds, and prize structures which required substantial effort and mathematical analysis to develop. Further, although plaintiff claims in his complaint to have suggested the name "Lots of Play," the court finds that he did not present credible evidence at trial to substantiate this allegation.

{¶ 18} For the foregoing reasons, the court finds that plaintiff failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.

_____
CLARK B. WEAVER SR.
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IGNATIUS J. LEONE

    Plaintiff

    v.

OHIO LOTTERY COMMISSION

    Defendant

Case No. 2010-12338

Judge Clark B. Weaver Sr.

JUDGMENT ENTRY

{¶ 19} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Christopher P. Conomy
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Michael P. Cassidy
11221 Pearl Road
Strongsville, Ohio 44136-3344

Filed March 7, 2013
To S.C. Reporter August 22, 2013